# NO. 22-4407

In The

# United States Court Of Appeals

## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

# DASHAWN LEONARD GARRETT,

*Defendant - Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH**

———————

## BRIEF OF APPELLANT

———————

**Matthew N. Leerberg**
**Nathan W. Wilson**
**FOX ROTHSCHILD LLP**
**434 Fayetteville Street**
**Raleigh, NC 27601**
**(919) 755-8759**

*Counsel for Appellant*

## TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .............................................................................. 1

JURISDICTIONAL STATEMENT .................................................... 3

ISSUES PRESENTED FOR REVIEW ............................................. 3

STATEMENT OF THE CASE ........................................................... 4

SUMMARY OF THE ARGUMENT .................................................. 10

ARGUMENT ...................................................................................... 11

    I.    The Government's Misrepresentations Rendered Garrett's Plea Involuntary ................................................... 11

        A.    Standard of Review .................................................... 12

        B.    The government acted impermissibly by using misrepresentations to obtain the warrant that led to Garrett's arrest ......................................................... 13

        C.    The government's misconduct induced Garrett to plead guilty ................................................................. 16

        D.    Alternatively, the lack of timely disclosure itself renders the plea involuntary ...................................... 21

    II.    The District Court Committed Reversible Error by Failing to Consider the Factors Set Forth in 18 U.S.C. § 3553(a) when Sentencing Garrett ...................................... 27

CONCLUSION ................................................................................... 30

STATEMENT REGARDING ORAL ARGUMENT ................................ 30

CERTIFICATE OF COMPLIANCE....................................................... 32

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Ali v. Raleigh Cnty.*,
  No. 5:17-CV-03386, 2018 WL 4390742
  (S.D.W. Va. Sept. 14, 2018) *aff'd*,
  813 F. App'x 915 (4th Cir. 2020) ...................................................17

*Alvarez v. City of Brownsville*,
  904 F.3d 382 (5th Cir. 2018) ........................................................24

*Brady v. Maryland*,
  373 U.S. 83 (1963) ............................................................... *passim*

*Brady v. United States*,
  397 U.S. 742 (1970) ............................................................. *passim*

*Franks v. Delaware*,
  438 U.S. 154 (1978) ...........................................................2, 9, 10

*Hill v. Lockhart*,
  474 U.S. 52 (1985) .......................................................................12

*Lafler v. Cooper*,
  566 U.S. 156 (2012) .....................................................................25

*Leka v. Portuondo*,
  257 F.3d 89 (2d Cir. 2001)............................................................26

*Mansfield v. Williamson Cnty.*,
  30 F.4th 276 (5th Cir. 2022) *cert. denied sub nom.*,
  No. 22-186, 2022 WL 17408182 (U.S. Dec. 5, 2022) .....................24

*McCann v. Mangialardi*,
  337 F.3d 782 (7th Cir. 2003) ........................................................23

*Pennsylvania v. Ritchie,*
    480 U.S. 39 (1987) ........................................................ 16

*Rita v. United States,*
    551 U.S. 338 (2007) ..................................................... 27

*Sanchez v. United States,*
    50 F.3d 1448 (9th Cir. 1995) ........................................ 24

*United States v. Avellino,*
    136 F.3d 249 (2d Cir. 1998) ......................................... 24

*United States v. Carter,*
    564 F.3d 325 (4th Cir. 2009) ........................................ 28

*United States v. Fisher,*
    711 F.3d 460 (4th Cir. 2013) ................................. *passim*

*United States v. Garner,*
    507 F.3d 399 (6th Cir. 2007) ........................................ 26

*United States v. Harris,*
    890 F.3d 480 (4th Cir. 2018) ........................................ 12

*United States v. Lynn,*
    592 F.3d 572 (4th Cir. 2010) ........................................ 28

*United States v. Moussaoui,*
    591 F.3d 263 (4th Cir. 2010) .................................. 22, 31

*United States v. Ohiri,*
    133 F. App'x 555 (10th Cir. 2005) ................................ 23

*United States v. Provance,*
    944 F.3d 213 (4th Cir. 2019) ............................. 27, 28, 29

*United States v. Ruiz,*
    536 U.S. 622 (2002) ..................................................... 23

*United States v. Sanya,*
    774 F.3d 812 (4th Cir. 2014) ........................................................ 12

*United States v. Spear-Zuleta,*
    No. 21-1158-CR, 2022 WL 17347243 (2d Cir. Dec. 1, 2022).......... 24

*United States v. Suggs,*
    No. 20-4032, 2022 WL 313845 (4th Cir. Feb. 2, 2022) ................. 28

*United States v. Woodley,*
    9 F.3d 774 (9th Cir. 1993) ........................................................... 25

*White v. United States,*
    858 F.2d 416 (8th Cir. 1988) ........................................................ 24

## Statutes:

18 U.S.C. § 3231 ............................................................................... 3

18 U.S.C. § 3553(a) ..................................................................... 27, 28

18 U.S.C. § 3742 ............................................................................... 3

28 U.S.C. § 1291 ............................................................................... 3

# INTRODUCTION

Dashawn Garrett and his co-defendant, Trevor Cole-Evans, were arrested together in a traffic stop. The government charged both with drug trafficking. Dashawn Garrett was sentenced to over twenty years in prison. The government dropped all charges against his co-defendant.

Why the disparity? To obtain the warrant underlying the investigation against Garrett and his co-defendant, the government misrepresented key facts to the warrant-issuing court concerning the credibility of a confidential source. The government never corrected those misrepresentations throughout its pre-trial proceedings against Garrett. And the government withheld from Garrett the documents that would have revealed the misrepresentations until it was too late.

Without knowledge of—or the ability to know about—the government's misrepresentations, both Garrett and his co-defendant moved to suppress evidence resulting from the warrant. The government waited until after briefing on the suppression motion was complete to turn over hundreds of pages of latent discovery. Buried within these pages were documents revealing the government's misrepresentations.

But the government did not provide Garrett time to discover the misrepresentations. Instead, it pressed forward with his case. By that time, Garrett's co-defendant had lost his motion to suppress. Having seen his co-defendant lose his suppression motion, and without sufficient time to review the latent disclosure before his own motion was heard, Garrett decided to plead guilty. This plea was not knowing and voluntary. It was manufactured by the government's misrepresentations and gamesmanship.

Meanwhile, Garrett's co-defendant discovered that the documents revealed misrepresentations by the government. He moved for a reconsideration of his suppression motion and request for a *Franks* hearing. The district court granted the co-defendant's motion—recognizing as meritorious the argument that the government misrepresented key evidence. But the government, rather than defend its actions at the hearing, dismissed all charges against the co-defendant.

As a result, Garrett is facing twenty-years in prison while his co-defendant is facing none. Their charges were based on the same evidence procured by the same misrepresentations. Because the government used misrepresentations to obtain Garrett's plea, the plea was involuntary.

Further, when sentencing Garrett, the district court did not provide any explanation for rejecting his arguments for a reduced sentence. By its silence, the district court prevented this Court from conducting satisfactory appellate review. Such circumstances constitute procedural error and require a remand as well.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231.

This appeal is from a final judgment of the United States District Court for the Eastern District of North Carolina, Eastern Division, rendered in open court by the Honorable Terrence W. Boyle on July 11, 2022, and recorded in a Judgment entered the same day. (JA276). A notice of appeal was timely filed on July 19, 2022. (JA283). Accordingly, this Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

I.    Misrepresentations by the government render a plea involuntary when they deprive a defendant of information that would affect his decision to plead. Here, the government misrepresented information to obtain a warrant, maintained its misrepresentations during pre-trial proceedings, and did not disclose information that would reveal the misrepresentations until it was too late for Garrett to use. Did that render his plea involuntary?

II.   In selecting a sentence, a district court must address all nonfrivolous reasons presented for imposing a different sentence and

3

explain why it has rejected those arguments.  Here, the district court did not address *any* of the reasons Garrett presented for imposing a lower sentence.  Was that reversible error?

## STATEMENT OF THE CASE

Defendant Dashawn Leonard Garrett was indicted for two counts of knowingly possessing a firearm as a felon, possessing a firearm in furtherance of a drug trafficking crime and five counts of possessing a Schedule II controlled substance with intent to distribute.  (JA319-321).  The indictment also alleged that Garrett had a prior felony drug offense conviction.  (JA322).

Garrett and his co-defendant were arrested in a traffic stop on March 9, 2021.  (JA71).  As a result of the stop, the government obtained a search warrant for Garrett's home.  (JA70).  The government claims that both the traffic stop and the search of the home revealed evidence of drug trafficking.  (JA135-136).  The government also purported to have evidence of Garrett engaging in drug transactions prior to the traffic stop. (JA131-134)

But this evidence was corrupted from the start.  In investigating Garrett, the government relied on real-time cellphone location tracking. (JA238, JA285).  The government got the warrant required to track this

4

private information. (JA231). But to obtain the warrant, the government misled the issuing court concerning key information. (JA286, JA289-290).

Specifically, the government indicated to the issuing court that it had used *one* confidential source to obtain the information underlying the request. (JA117, JA286, JA289-290). In reality, the government had relied on two. (JA232, JA286, JA290).

This second source had significant credibility issues. The government paid the second source $200.00 for his or her services. (JA234, JA286, JA289-290). Further, this second source had never been utilized before. (JA234, JA286, JA289-290).

In seeking the warrant, the government hid this information from the issuing court. Rather than revealing that there was a second source with serious credibility issues, the government indicated to the issuing court that the first source was utilized in both transactions. (JA117, JA286, JA289-290). This misled the issuing court, as the government's misrepresentation imputed the reliability of the first confidential source to the paid and untested actions of the second. (JA290).

After obtaining the warrant, the government used it to investigate Garrett. (JA286). Without this real-time cellphone tracking, the government would not have known the location of the vehicle to effectuate the traffic stop on March 9, 2021, which started this whole case. (JA286).

Not only did the government mislead the issuing court to obtain a warrant, it also misled Garrett. Despite the district court's reminder "that under *Brady v. Maryland* and its progeny the suppression by the prosecution of evidence favorable to an accused upon request violates due process," (JA6), the government's initial discovery production omitted any documents revealing the credibility issues of the second confidential source. (JA286). Moreover, when Garrett moved to suppress the government's evidence, whether knowingly or not, the government continued to misrepresent that there was only one confidential source. (JA131-135). Indeed, the government further misrepresented that it did not rely on real-time cellphone-tracking data. (JA153, JA285-286).

The government waited until February 2, 2022, to provide documents that unveiled its deception. (JA286). At that point, briefing on the motions to suppress was complete. (JA14, JA169). The government's briefing contained nothing that would alert Garrett to the nature of the

misrepresentations.  (JA131-134).  And the few pages that disproved the government's false statements were buried within hundreds of other pages of late documents.  (JA286).

The district court then denied Garrett's co-defendant's motion to suppress.  (JA216).  Garrett moved the district court to continue his suppression hearing but received less than three weeks' extension.  (JA15).

Proceeding with the suppression hearing was risky.  The district court could interpret Garrett's decision to pursue the suppression motion rather than pleading guilty as a refusal to "accept responsibility."  This would seriously hurt Garrett's chances at obtaining a more lenient sentence if the suppression hearing proved unsuccessful.  Moreover, Garrett's co-defendant had just proven unsuccessful on a suppression motion involving the same set of facts.

At that point Garrett had to do something.  He had already received one extension for the suppression hearing.  And the government was pressing "to move forward with" Garrett's case.  (JA258).  Faced with these circumstances, Garrett entered a plea agreement and pleaded guilty on March 16, 2022.  (JA267, JA340).

Garrett pleaded guilty to Count One, conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine; Count Two, possession of a firearm by a convicted felon; and Count Five, aiding and abetting the possession with intent to distribute 50 grams or more of methamphetamine. (JA335-338).

Garrett was sentenced on July 11, 2022. (JA18). At the sentencing hearing, Garrett's attorney asked for the mandatory minimum sentence of 180 months. (JA270). Garrett's attorney explained that this minimum sentence was appropriate as Garrett had a newborn son and wanted to be present as a father. (JA270-271).

The district court did not address this argument when it sentenced Garrett. (JA273-274). In fact, it didn't provide any explanation at all for the chosen sentence. (JA273-274). Instead, the district court simply named the counts to which Garrett pleaded guilty, the length of sentence it was rendering for each count, and the manner in which they would run (concurrently). (JA273-274). The district court's pronouncement was devoid of any explanation as to why it rejected Garrett's request for the minimum sentence. (JA273-274). Garrett received a sentence of twenty-years of imprisonment—*five years* longer than requested. (JA273-274).

8

Judgment was entered against Garrett that same day. (JA276). Garrett timely noticed appeal shortly thereafter, on July 19, 2022. (JA283).

Meanwhile, Garrett's co-defendant, acting *pro se*, had combed through the late documents and discovered evidence of the government's misrepresentations. (JA219-222).

*After* Garrett was sentenced and appealed, the co-defendant—via newly appointed counsel—moved the district court to reconsider its denial of the motion to suppress and hold a *Franks* hearing. (JA285). The government responded, arguing that some of the initially disclosed discovery would have indicated that there were two confidential sources. (JA302). Yet none of the excerpts highlighted by the government revealed that the second source was paid $200 and had never been utilized before. (JA302). It was *that* undisclosed information—which undermined the second source's credibility—that made the government's misrepresentation to the issuing court so significant.

Accordingly, the district court granted the co-defendant's motion. (JA313). In doing so, the district court recognized that "the omission of the fact that there were two separate confidential sources utilized

appears to be an omission made at a minimum with reckless disregard for the truth." (JA312).

Now it was the government's turn in the hot seat. Like Garrett, the government had to choose whether to keep fighting or to find some other way out. Yet, unlike Garrett, the government held all the cards and knew all the relevant information to inform its decision. With that knowledge in hand, and rather than appear for the *Franks* hearing, the government dismissed *all charges* against the co-defendant with prejudice. (JA318, JA326-329). The government offered no explanation for this decision. (JA317).

Today, Garrett is in prison for 20 years while his co-defendant is free, even though both were arrested based on the same evidence.

## SUMMARY OF THE ARGUMENT

When government misrepresentations induce a defendant to plead guilty, that plea is involuntary. Here, the government misrepresented evidence in order to obtain a search warrant. The government then maintained that misrepresentation during pre-trial proceedings. While it eventually provided Garrett documents that revealed its misrepresentations, those documents were hidden among hundreds of other pages of

latent discovery and turned over too late for Garrett to utilize. The government ensured Garrett did not have a chance to utilize the discovery by pressing forward with the case. Under these circumstances, government misconduct deprived Garrett from knowingly pleading guilty.

A sentencing court must state its reasons for choosing a sentence with sufficient particularity so that an appellate court can conduct a meaningful review. Failure to do so is procedural error requiring resentencing. Here, Garrett's counsel requested at sentencing that the district court impose the mandatory minimum. The district court rejected this request by imposing a higher sentence. But the district court never provided any explanation for rejecting defendant's request or for choosing a higher sentence. Accordingly, the district court committed procedural error and the sentence should be reversed and remanded.

## ARGUMENT

## I. The Government's Misrepresentations Rendered Garrett's Plea Involuntary

A guilty plea "not only must be voluntary but must be [a] knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "The longstanding test for determining the validity of a guilty

plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). As this Court has recognized, misrepresentations by the government that induce a defendant to plead guilty render a plea involuntary. *United States v. Fisher*, 711 F.3d 460, 465 (4th Cir. 2013). And that is exactly what happened here.

### A.   Standard of Review

If a defendant does not move to withdraw his plea or otherwise object to the plea proceedings in the district court, this Court reviews for plain error. *United States v. Sanya*, 774 F.3d 812, 815-16 (4th Cir. 2014). "Under the plain error standard, [this Court] will correct an unpreserved error if (1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018). Garrett satisfies this standard.

**B.    The government acted impermissibly by using misrepresentations to obtain the warrant that led to Garrett's arrest.**

The government misled the court that issued the warrant, and attempted to mislead the district court below, regarding the credibility of the confidential source whose testimony underlay the warrant in this case.  Such conduct was impermissible.

The first step to set a plea aside under *Fisher* requires a showing that "impermissible government conduct occurred."  11 F.3d 465.  This step is satisfied when a "[d]efendant's misapprehension stem[med] from an affirmative government misrepresentation."  *Id.* at 466 (quotation omitted).  For instance, in *Fisher*, the first step was satisfied when the defendant showed that the search warrant that led to arrest was "issued solely on the basis of an untruthful law enforcement affidavit."  *Id.* at 467.

Likewise, in this case, the government obtained the search warrant that led to Garrett's arrest through an untruthful affidavit.  The government's investigation of Garrett relied heavily upon a warrant to obtain real-time location data from Garrett's cellphone.  (JA 238, JA285-286).  To obtain this warrant, the government submitted an affidavit, which

misled the issuing court to believe that the police had utilized one confidential source. (JA117, JA286, JA289-290). In reality, the latent discovery disclosed that there were two confidential sources. (JA232, JA286, JA290).

The second confidential source had credibility problems from the start. The government paid this second confidential source $200.00 for his or her services. (JA234, JA286, JA289-290). In addition, the government had never utilized this second source before. (JA234, JA286, JA289-290).

But the government hid this information from the warrant-issuing court. Instead of admitting that there were two sources, the affidavit indicated that only one was used in transactions with Garrett. (JA117, JA286, JA289-290). Worse still, the government implied that the key source was the first, making no mention of the second, *actual* source. (JA117, JA286, JA289-290)). In doing so, the government imputed the reliability of the first confidential information to the second, misleading the issuing court to secure the warrant. (JA290).

Even after it obtained the warrant, the government was not finished with its misrepresentations. Whether intentionally or not, when

14

responding to Garrett's motion to suppress, the government continued to argue that there was only one confidential source. (JA131-135). And it did not disclose any issues relating to that source's credibility. (JA131-135).

True, the government argued below that portions of the initially disclosed discovery may have indicated that there were two confidential sources. (JA302). But none of the excerpts the government provided indicated that the second source was paid $200 and had never been utilized before. (JA302). It was that information—which undermined the second source's credibility—that made the government's misrepresentation to the warrant-issuing court so significant. And the government failed to demonstrate that this information was in the initially produced discovery.

Thus, like the defendant in *Fisher*, Garrett has shown that the warrant that led to his arrest was based on a government misrepresentation. Such misrepresentations comprise impermissible conduct. *Fisher*, 711 F.3d at 456. Therefore, Garrett has satisfied the first element of *Fisher*.

### C. The government's misconduct induced Garrett to plead guilty

The government waited to release the evidence revealing its misrepresentations until after briefing for the suppression hearing was completed. And the government never affirmatively corrected its misrepresentations. Instead, the government pressed to speed up the case. These actions induced Garrett to plead guilty involuntarily.

The second step to establish an involuntary plea under *Fisher* requires the defendant to show that "the misconduct induced him to plead guilty." *Fisher*, 711 F.3d at 467. This is an objective assessment. *Id.* The defendant "must show that a reasonable defendant standing in his shoes likely would have altered his decision to plead guilty, had he known about the [the officer's] misconduct." *Id.*; *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) ("A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome [of the case]." (quotation omitted)).

Since the search warrant was predicated on misrepresentations, it was crucial that Garrett know about those misrepresentations prior to any suppression proceedings. "[T]he decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against

him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." *Brady v. United States*,[1] 397 U.S. at 756; *see also Ali v. Raleigh Cnty.*, No. 5:17-CV-03386, 2018 WL 4390742, at *3 (S.D.W. Va. Sept. 14, 2018) ("Exculpatory evidence will most certainly affect how the defendant's counsel makes decisions and effectively advises her client, especially at a time when the *vast majority* of criminal proceedings are resolved through guilty pleas. Defendants and their attorneys evaluate the decision of whether to plead, not based solely on the defendants' assessment of his own guilt, but on the risks posed by proceeding to trial—risks that can be evaluated only through review of the Government's evidence, including that which is exculpatory."), *aff'd*, 813 F. App'x 915 (4th Cir. 2020).

Here, all proceedings in Garrett's case would be heard by the same judge, of course. As a result, pursuing the suppression motion presented great risk to Garrett. Should that effort prove unsuccessful, the judge could view Garrett's pursuit of the suppression motion as a refusal to

---

[1] Since this brief repeatedly cites both *Brady v. United States*, 397 U.S. 742 (1970), and *Brady v. Maryland*, 373 U.S. 83 (1963), the full case name will be used in each instance to avoid confusion. *See United States v. Fisher*, 711 F.3d 464 n.1.

take responsibility. And a refusal to take responsibility would be incredibly costly during sentencing, under the guidelines and otherwise.

Through its misrepresentations, the government ensured that neither Garrett nor his counsel could undertake an adequate assessment of this risk. Garrett filed his motion to suppress on December 27, 2021, (JA70), and his reply on January 31, 2022, (JA160). Meanwhile, in its briefing, the government continued to misrepresent that there was only one confidential source. (JA131-135). The government did not provide the additional discovery until February 2, 2022, after briefing on Garrett's suppression motion had closed. (JA286)

True, Garrett received the latent discovery before he tendered his plea. But there is no bright-line rule whereby government misrepresentations are instantly cured the moment documents are produced revealing the lie. Rather, "[t]he voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. at 749. *Fisher* likewise looked to "the totality of the circumstances." 711 F.3d at 469. This Court, too, must therefore look to the totality of the circumstances to determine the effect of this sequence of events on the voluntariness of Garrett's plea.

Here, the totality of the circumstances reveals that the government's misrepresentations, in combination with its latent disclosure, caused Garrett to plead guilty when he would not have otherwise.

First, the government's dilatory production included hundreds of pages, which were not easily decipherable. (*See, e.g.*, JA234 (including a scrawled marginal note apparently reading "$200.00 pay ci"—the key evidence that the second informant was paid)).

Second, briefing was already finished on Garrett's motion to suppress by the time the documents were produced. (JA160, JA286).

Third, Garrett had witnessed his co-defendant's motion to suppress be denied on February 22, 2022. (JA216). He had no reason to believe that his pending motion would fare any better.

Fourth, the clock was ticking for Garrett. The district court had set Garrett's suppression hearing for oral argument on February 25, 2022. (JA14). Having seen the court deny the similar motion of his co-defendant only three days before, Garrett's counsel moved to continue the suppression hearing. (JA15). But even then, the hearing was only continued for three weeks. Meanwhile, the government was pressing "to move forward with this [case]." (JA258).

Garrett had to do something. He had already received one extension on the suppression hearing. The information indicating the government's misrepresentations was buried within hundreds of pages of additional documents. And the government's misrepresentations in its suppression-hearing briefs, including the one that led to the denial of Cole-Evan's suppression motion, further hid the wrongdoing from Garrett. (JA131-135).

So, Garrett moved to withdraw his motion to suppress. (JA247). The next day, he pleaded guilty. (JA340).

Under all these circumstances, it was not reasonable to expect that Garrett or his counsel would have uncovered the misrepresentations hiding in the recently disclosed documents in time to make an informed calculus on the benefits of litigating the suppression issue as opposed to pleading guilty. And this was caused by the government's misrepresentations.

But for that conduct, Garrett would have continued to pursue his suppression motion. This is not unsupported speculation. Rather it is exactly what his co-defendant's counsel did upon discovering the true import of the documents—many months after the government's disclosure.

(JA285). And while *Fisher* makes clear that a defendant need not prove that they would have been successful in their suppression efforts, *Fisher*, 711 F.3d at 469, it is reasonable here to infer that Garrett would have prevailed. After all, the government dropped *all charges* against his co-defendant after he renewed his motion to suppress and requested a *Franks* hearing. (JA317-318)

Garrett, therefore, has satisfied the requirements of *Fisher*. The government made two affirmative misrepresentations—first to obtain the warrant and then later about the scope of the warrant itself. And though the government later released evidence contradicting its misrepresentations, it buried that evidence within hundreds of documents and then pressed Garrett's case forward, preventing him from discovering the true facts. Under these circumstances, Garrett's plea was not knowing and voluntary.

**D.    Alternatively, the lack of timely disclosure itself renders the plea involuntary.**

There is an alternative, additional ground on which this Court can find Garrett's plea to have been involuntary. A lack of timely disclosure standing alone makes a plea involuntary, all by itself.

21

In *Fisher*, this Court recognized that the defendant provided "two distinct reasons" for challenging the plea: First, under *Brady v. United States*, 397 U.S. 742 (1970), that it was involuntary due to the government's misconduct. Second, under *Brady v. Maryland*, 373 U.S. 83 (1963), a plea may be involuntary where "the government fail[s] to meet its evidentiary disclosure obligations." *Fisher*, 711 F.3d at 464. This Court ended up not reaching the second reason, as it adopted the *Brady v. United States* misconduct argument.

Whether the government's failure to produce exculpatory evidence can render a plea involuntary is an open question, both at the Supreme Court and before this Court. Even before *Fisher*, this Court noted that "[t]o date, the Supreme Court has not addressed the question of whether the *Brady*[ *v. Maryland*] right to exculpatory information, in contrast to impeachment information, might be extended to the guilty plea context." *United States v. Moussaoui*, 591 F.3d 263, 286 (4th Cir. 2010), *as amended* (Feb. 9, 2010). But *Moussaoui* did not provide this Court an opportunity to "resolve" that question.

The Supreme Court has held that "the Constitution does not require the Government to disclose material *impeachment* evidence prior

to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002) (emphasis added). But the Supreme Court reached this holding in part because *impeachment* evidence is not "critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant." *Id.* at 630.

The *Ruiz* Court left open the door that *exculpatory* evidence would produce a different result. *See McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) ("Given [*Ruiz*'s] distinction [between impeachment and exculpatory evidence,] it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors . . . have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea.")

Several circuits have walked through that open door. Prominently, the Tenth Circuit held that the government's failure to disclose a statement by a coworker, which absolved the defendant of responsibility for the crime, was a due process violation under *Brady v. Maryland*. *United States v. Ohiri*, 133 F. App'x 555, 561-62 (10th Cir. 2005). Likewise, in the Second Circuit, "the failure to disclose *Brady*[ *v. Maryland*] material

prior to a guilty plea" renders the plea "vulnerable to challenge" as not "knowing and intelligent." *United States v. Spear-Zuleta*, No. 21-1158-CR, 2022 WL 17347243, at *5 (2d Cir. Dec. 1, 2022) (citing *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (per curiam)). The Eighth Circuit has also held that a defendant can challenge "a guilty plea on a claimed *Brady*[ *v. Maryland*] violation." *White v. United States*, 858 F.2d 416, 422 (8th Cir. 1988). And the Ninth Circuit adopted this holding as well. *See Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995) (citing *White*, 858 F.2d at 424).

Other circuits, meanwhile, hold differently. *See Alvarez v. City of Brownsville*, 904 F.3d 382, 392 (5th Cir. 2018) ("[S]ettled precedent in this circuit h[o]ld[s] that there [i]s no constitutional right to *Brady*[ *v. Maryland*] material prior to a guilty plea."); *see also Mansfield v. Williamson Cnty.*, 30 F.4th 276, 282 n.9 (5th Cir. 2022) (Higginbotham, J., concurring) (providing overview of the circuit split), *cert. denied sub nom.* No. 22-186, 2022 WL 17408182 (U.S. Dec. 5, 2022).

This Court should join the Circuits recognizing that failure to disclose material exculpatory evidence violates the due process clause under *Brady v. Maryland*. The reality is "that criminal justice today is for the

most part a system of pleas, not a system of trials." *Lafler v. Cooper*, 566 U.S. 156, 170 (2012). Within this system, "[t]he decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." *Brady v. United States*, 397 U.S. at 756. "To guarantee due process in the modern criminal justice system, *Brady*[ *v. Maryland*] must at least reach a prosecutor's intentional decision to withhold exculpatory evidence in pre-trial plea bargaining." *Mansfield*, 30 F.4th 282 (Higginbotham, J., concurring).

As described here, the government failed to timely disclose material, exculpatory evidence. The evidence was so powerful that the government dropped charges against Garrett's co-defendant when it came to light. Yes, the government provided the evidence to Garrett prior to his guilty plea. But, as under *Brady v. United States*, there is no fixed rule that the government automatically meets its obligations by disclosing the material before the guilty plea is finalized.

Rather, "disclosure must be made when it is still of substantial value to the accused." *United States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993). In certain circumstances, even disclosure during trial can avoid a

*Brady v. Maryland* violation.  *Id.*  In other instances, disclosure before trial is not enough.  *See, e.g.*, *Leka v. Portuondo*, 257 F.3d 89, 99 (2d Cir. 2001) (holding that not identifying exculpatory evidence "until three business days before trial" violated *Brady v. Maryland*); *United States v. Garner*, 507 F.3d 399, 401, 407 (6th Cir. 2007) (holding that exculpatory evidence turned over "the morning the trial began" was not turned over soon enough).

In this case, the government waited until after the disclosure was no longer "of substantial value to the accused" to provide the exculpatory discovery.  As described above, the disclosure did not occur until after briefing on the suppression motion was completed.  The government maintained the misrepresentations in its briefing, even if advertently.  It also hid the exculpatory evidence among hundreds of other pages of late documents.  Days after the disclosure, Garrett's co-defendant lost his motion to suppress and the government was pressing Garrett to resolve his case.  Under these circumstances, the government's latent disclosure violated *Brady v. Maryland*.

This Court should join several of its sister circuits recognizing that the failure to disclose material exculpatory information in the plea

context is a violation of due process under *Brady v. Maryland*. Under that standard, the government's failure to disclose its misrepresentations to Garrett until after it was no longer useful violated due process. This violation rendered Garrett's plea involuntary. This Court should allow Garrett to withdraw his plea and should remand this case for further proceedings.

## II. The District Court Committed Reversible Error by Failing to Consider the Factors Set Forth in 18 U.S.C. § 3553(a) when Sentencing Garrett

The district court did not provide any explanation at all for rejecting Garrett's arguments at sentencing. This was reversible error under well-established precedent.

A sentencing judge "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). To do this, "the district court must make an individualized assessment based on the facts presented," applying the relevant 18 U.S.C. § 3553(a) sentencing factors to the specific circumstances of the case." *United States v. Provance*, 944 F.3d 213, 218 (4th Cir. 2019). In addition, the district court "must state in open

court the particular reasons supporting its chosen sentence." *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009); *see also United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010) ("An individualized explanation must accompany every sentence.").

Depending on the arguments before it, the explanation need not be much, but it still must be something. For instance, this Court in an unpublished decision recently held that the district court's statement "under 3553(a) the Government ha[d] satisfied their burden of proof and a sentence within the guideline at the low-end is appropriate in this case" met this bar, "though barely." *United States v. Suggs*, No. 20-4032, 2022 WL 313845, at *3 (4th Cir. Feb. 2, 2022). Yet in this case, the district court did not provide even the meagerest of explanations for the sentence.

At Garrett's sentencing hearing, his attorney asked for the mandatory minimum sentence of 180 months. (JA270). The attorney explained Garrett's desire to be home for his son and other specifics about his situation. (JA270-271). When the district court sentenced Garrett, precedent required it to address those specific circumstances. *Provance*, 944 F.3d at 218. It didn't do that. (JA273-274). The district court's entire explanation was as follows:

28

> Okay. On Counts 1 and 5 concurrent, I'll impose a sentence of 240 months. On Count 2, concurrent, a sentence of 120 months to run concurrently. Supervised release of ten years on Count 1, ten years on Count 5 and three years on Count 2, all concurrent. Special assessments of $300.00. During his supervision he is to abide by the standard conditions of supervision adopted in the Eastern District of North Carolina. I'll give him credit for the time served and recommend him to a facility in Butner.

(JA273-274).

This terse pronouncement contained no explanation of the district court's reasoning. Accordingly, the district court erred in sentencing Garrett.

This was a procedural error. *Provance*, 944 F.3d at 218. When "the sentence is procedurally unreasonable" it must be vacated and remanded for resentencing. *Id.* at 219.

* * *

The Supreme Court has explicitly rejected the notion

> that guilty plea convictions hold no hazards for the innocent or that the methods of taking guilty pleas presently employed in this country are necessarily valid in all respects. This mode of conviction is no more foolproof than full trials to the court or to the jury. Accordingly, we take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or by trial.

*Brady v. United States*, 397 U.S. at 757–58. In accordance with those cautions, this Court has recognized that guilty pleas obtained through government misrepresentations are involuntary. This case presents another such example. To prevent an "unsound result" in this case, Garrett respectfully requests that the Court hold his plea was involuntary and remand this case for further proceedings. And even if this Court finds the plea voluntary, it at least should remand for the district court to correct its procedural errors at sentencing.

## CONCLUSION

Garrett's guilty plea should be set aside and this case remanded for further proceedings. Alternatively, Garrett's sentence should be vacated and this case remanded for resentencing.

## STATEMENT REGARDING ORAL ARGUMENT

This case presents the Court with an opportunity to develop its precedents.

First, since *Fisher*, this Court has not addressed another situation where government misrepresentations to obtain a warrant rendered a plea involuntary. While the underlying misrepresentations in this case resemble those in *Fisher*, there are also notable differences in the

30

procedural postures of the two cases. These differences will allow this Court to explore the application of *Fisher* in a somewhat new context.

Second, as recognized in *Moussaoui*, this Court has yet to resolve whether the failure to disclose exculpatory evidence can ever render a plea involuntary. There is currently a circuit split on that precise issue. Addressing it in this case will allow this Court to provide helpful guidance to the district courts for future cases.

Finally, the facts underlying this case are complex and intertwined between two different defendants. Exploring the merits of Garrett's argument will require a thorough analysis of both the material in the record as well as the inferences that are drawn therefrom.

Given this backdrop, the importance of the issues presented, and the opportunity for the Court to meaningfully develop the law on several key points, Garrett respectfully submits that oral argument would assist this Court in its decision-making process.

This the 27th day of December, 2022.

/s/ Matthew Nis Leerberg
Matthew Nis Leerberg
Nathan W. Wilson
FOX ROTHSCHILD LLP
434 Fayetteville Street
Raleigh, NC 27611
(919) 755-8700

*Counsel for Appellant*

31

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, table of contents, table of citations, signature block, certificates of counsel):

This document contains <u>5,530 words</u>.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Century School-book</u>.

Dated:  December 27, 2022.

<u>/s/ Matthew Nis Leerberg</u>
Matthew Nis Leerberg
Nathan W. Wilson
FOX ROTHSCHILD LLP
434 Fayetteville Street
Raleigh, NC 27611
(919) 755-8700

*Counsel for Appellant*